In the District Court of the United States
For The District of South Carolina
BEAUFORT DIVISION


Ricky Black, #240527,                          )        Civil Action No.  9:06-2247-JFA-GCK
                                               )
                    Plaintiff,                 )
                                               )
            vs.                                )        **REPORT AND RECOMMENDATION**
                                               )        **OF THE MAGISTRATE JUDGE**
Ben Sheriff, Pickens County Probation          )
Agent,                                         )
                                               )
                    Defendant.                 )
                                               )

## I.    INTRODUCTION

The Plaintiff, Ricky Black ("Plaintiff" or "Black"), has filed this action against Ben

Sheriff, a Pickens County Probation Agent ("Defendant"), for violation of his civil rights

under 42 U.S.C. § 1983.[1]  Pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Civil Rule

73.02(B)(2)(d), D.S.C., the undersigned United States Magistrate Judge is authorized to

review all pretrial matters in prisoner cases filed under 42 U.S.C. § 1983, and submit

findings and recommendations to the District Court.

## II.    *PRO SE* COMPLAINT

The Plaintiff is a *pro se* litigant, and thus his pleadings are accorded liberal

construction.  *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*); *Estelle v. Gamble*, 429

U.S. 97 (1976); *Haines v. Kerner*, 404 U.S. 519 (1972); *Loe v. Armistead*, 582 F. 2d 1291 (4th

Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir.), *cert. denied, Leeke v. Gordon*,

439 U.S. 970 (1978).  Under established local procedure in this judicial district, a careful

review has been made of the *pro se* Petition herein pursuant to the procedural provisions of

---

[1]    The Plaintiff currently is confined in Manning Correctional Institution, a facility of the
South Carolina Department of Corrections.  Plaintiff's incarceration is not connected to
the Section 1983 action pending before this court.

the Anti-Terrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, Title I, §

104, 110 Stat. 1214.  This review has been conducted in light of the following precedents:

*Denton v. Hernandez*, 504 U.S. 25 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989);

*Haines v. Kerner*, 404 U.S. 519 (1972); *Nasim v. Warden, Maryland House of Correction*, 64

F.3d 951 (4th Cir. 1995) (*en banc*), *cert. denied*, 516 U.S. 1177 (1996); *Todd v. Baskerville*,

712 F.2d 70 (4th Cir. 1983).

     *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys.

*Hughes*, 449 U.S. 5 (1980).  Even under this less stringent standard, however, the *pro se*

complaint nonetheless may be subject to summary dismissal.  The mandated liberal

construction afforded to *pro se* pleadings means that if the court can reasonably read the

pleadings to state a valid claim on which the plaintiff could prevail, it should do so, but a

district court may not rewrite a petition to include claims that were never presented.  *Barnett*

*v. Hargett*, 174 F.3d 1128 (10th Cir. 1999).  Likewise, a court may not construct the

plaintiff's legal arguments for him (*Small v. Endicott*, 998 F.2d 411 (7th Cir. 1993)) or

"conjure up questions never squarely presented" to the court.  *Beaudett v. City of Hampton*,

775 F.2d 1274, 1278 (4th Cir. 1985), *cert. denied*, 475 U.S. 1088 (1986).  The requirement of

liberal construction, however, does not mean that the court can ignore a clear failure in the

pleading to allege facts which set forth a claim currently cognizable in a federal district court.

*Rice v. National Security Council*, 244 F.Supp. 2d 594, 596 (D.S.C. 2001), *citing Weller v.*

*Dep't of Social Services*, 901 F.2d 387 (4th Cir. 1990).

### III.  FACTUAL BACKGROUND

     On October 15, 1998, the Plaintiff pled guilty in the Pickens County Court of General

Sessions to seventeen (17) counts of forgery.  The Plaintiff was sentenced to eleven (11)

concurrent terms of fifty-four (54) months imprisonment on 98-GS-39-1847, 1849, 1850,

1854, 1856, 1857, 1858, 1859, 1861, 1862, and 1863; to fifty-four (54) months imprisonment

suspended upon the service of one (1) year probation on 98-GS-39-1855; and to five (5)

concurrent terms of fifty-four (54) months imprisonment suspended during probation on 98-GS-39-1846, 1851, 1852, 1953, and 1860.[2]  The Plaintiff did not appeal his convictions and sentences.

The Defendant went to the Pickens County Detention Center on October 15, 1998, the day Plaintiff was sentenced, to process Plaintiff for his pending probationary sentence.[3] The Plaintiff was presented with the Department's Standard Conditions of Probation, which instructed Plaintiff to "report in person to the South Carolina Department of Probation, Parole and Pardon Services' office on the day of my sentencing or release, and as instructed by the Department and I shall make complete and truthful reports to the Agent."[4] Accordingly, the Defendant told Plaintiff to report when he was released from the active fifty-four (54) month portion of the sentence, and explained the requirements of probation that would apply upon release.[5]  From the record, it appears that Plaintiff contended that his sentences of 54 months ran concurrent, and that he was not sentenced to probation, but to six (6) months at the restitution center.[6]  According to the Defendant, Plaintiff refused to sign the probation documents and stated he would not report upon release.  The Defendant informed Plaintiff that if he failed to report, a warrant for violation of probation would be issued.[7]

---

[2]     *See* Affidavit of Ben Sheriff ("Sheriff Affidavit"), attached as Exhibit 3 to Defendant's Memorandum, at ¶ 4; *see also* original Probation Order and Sentencing Sheets all dated October 15, 1998, attached as Exhibit 2 to Defendant's Memorandum.

[3]     *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 5.

[4]     *See* original Probation Order and Sentencing Sheets, all dated October 15, 1998, attached as Exhibit 2 to Defendant's Memorandum.

[5]     *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 5.

[6]     *See* Transcript of hearing on October 29, 2001 before the Honorable Henry F. Floyd, at page 5.  The transcript is attached to Defendant's Memorandum in Support of Motion for Summary Judgment.  The copy of the transcript filed with the court, as well as a second copy obtained from the Defendant at the request of the court, is missing page 7.

[7]     *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 5.

On September 26, 2000, Plaintiff was "re-sentenced" by the original sentencing judge as follows:  "Original sentence stands, only exception is probation terminates upon restitution and payment of fines, etc. in full."[8]  Similar language was added to the Probation Order to state:  "Case maybe [sic] terminated upon payments of Fines and Restitution."[9] Following the re-sentencing proceeding, another probation agent (not the Defendant) processed Plaintiff for his pending probationary sentence.[10]  The Plaintiff again was presented with the Department's Standard Conditions of Probation which required that he "report in person to the South Carolina Department of Probation, Parole and Pardon Services' office on the day of my sentencing or release and as instructed by the Department."[11]  The Plaintiff signed these papers, indicating that he had read the Order of Probation and the Conditions set out therein and agreed to comply with the conditions during the period of his probation.[12]  The Plaintiff did not appeal this "amended sentencing" proceeding.

On July 16, 2001, upon satisfying the fifty-four (54) month sentence for the twelve (12) indictments identified above, Plaintiff was released from the South Carolina Department of Corrections ("SCDC").  An active probation case was opened by a person in the Department of Probation, Parole and Pardon Services other than the Defendant in an attempt to begin supervising Plaintiff on his one (1) year term of probation; however, Plaintiff never reported to the Department's office pursuant to the court's orders, or as instructed by the

---

[8]     *See* Amended Sentencing Sheet for 98-GS-38-1855 attached as Exhibit 4 to Defendant's Memorandum.

[9]     *See* Amended Probation Order for 98-GS-38- 1855, attached as Exhibit 5 to Defendant's Memorandum.

[10]    *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 6.

[11]    *See* Exhibit 6, attached to Defendant's Memorandum.

[12]    *See* Exhibits 5 and 6, attached to Defendant's Memorandum.

Department.[13]  As a result, on July 30, 2001, Probation Arrest Warrant #W-39-01-0203 was

issued, which charged Plaintiff with violating the conditions of his probation as follows:[14]

> By violating condition #1 in that offender has failed to report to the Pickens County
> Probation Office since his release on 7/16/01 and keeping his whereabouts unknown
> to his agent thereby absconding supervision.  Offender was notified in writing on letter
> written 7/9/01 to report on his release.  His father and sister both state they are not
> aware of his location.  By violating condition #9 in that he has failed to pay his court
> ordered restitution of $3,475.07 and his court ordered fine totaling $618.00 in that he
> has absconded supervision.  By violating special condition of probation in that he was
> ordered to enter restitution center upon his release and he has not reported to have
> this condition set up.  These actions constitute violations of probationary sentence
> received 10/15/98 in General Sessions Court Pickens County in cause # 98-GS-39-
> 1855 and suspended during probation cases 98-GS-39-1846, 1851, 1852, 1853, and
> 1860.[15]

On October 29, 2001, Plaintiff appeared at a probation violation hearing before the

Honorable Henry F. Floyd.  Plaintiff was represented by public defender John Dejong,

Esquire.[16]  Plaintiff testified he had reviewed the probation violation report, understood the

reason was in court, and agreed that he had willfully violated the terms and conditions of his

probation.[17]  The Defendant addressed the probation court on behalf of the State.[18]  At the

conclusion of the hearing, Judge Floyd found that the Plaintiff had violated the terms of his

probation, revoked probation in full, re-instated the suspended fifty-four (54) month

---

[13]     See Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 7.

[14]     See Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 7.

[15]     See Probation Arrest Warrant #W-39-01-0203 issued July 30, 2001, and served October
         25, 2001, attached as Exhibit 7 to Defendant's Memorandum, and Violation Report dated
         October 29, 2001, attached as Exhibit 8 to Defendant's Memorandum.

[16]     Mr. Dejong initially had been named as a defendant in this case, but was dismissed
         without prejudice and without service of process by Order of this court entered on
         October 2, 2006.  [12]

[17]     See Transcript of October 29, 2001 hearing before Judge Floyd, attached as Exhibit 9
         to Defendant's Memorandum.

[18]     See Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 8.

sentence, and converted restitution owed to civil judgments.[19]  Plaintiff did not appeal his

probation revocation.

Shortly thereafter, on December 14, 2001, Plaintiff filed an application for Post-

Conviction Relief ("PCR") (2001-CP-39-1173).[20]  The State filed its Return on July 29,

2002.[21]  Plaintiff filed an Amended Application for PCR on October 23, 2002, alleging that

he was entitled to relief on the ground that he had fully served his sentence and he was being

unlawfully held in custody.[22]

A hearing on the PCR Application was convened at the Greenville County

Courthouse on December 16, 2002, before the Honorable Larry R. Patterson.  Plaintiff was

represented by James C. Alexander, Esquire.  The State was represented by William Bryan

Dukes of the South Carolina Office of the Attorney General.  By Order dated August 19,

2003, and filed August 21, 2003, Judge Patterson granted the Application for PCR and

ordered Plaintiff's immediate release from incarceration.  Judge Patterson concluded that

Plaintiff had completed his October 15, 1998, sentence upon his release from prison in 2001,

that there was no remaining sentence for which he could have been on probation, and that he

should not have been returned to prison for a probation violation.[23]  The State did not appeal

the PCR court's grant of relief.[24]

---

[19]     *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 9; *see also* Orders all dated October 29, 2001, attached as Exhibit 10 to Defendant's Memorandum.

[20]     *See* PCR Application, attached as Exhibit 11 to Defendant's Memorandum.

[21]     *See* Exhibit 12 to Defendant's Memorandum.

[22]     *See* Amended PCR Application, attached as Exhibit 13 to Defendant's Memorandum.

[23]     *See* Exhibit 14 to Defendant's Memorandum.

[24]     *See* Letter dated October 24, 2003, from Assistant Attorney General Dukes to SCDC attached as Exhibit 15 to Defendant's Memorandum.

### IV.  PROCEDURAL HISTORY IN FEDERAL COURT

On August 9, 2006, Plaintiff commenced this Section 1983 action against his attorney, Mr. Dejong, and the Defendant.  Plaintiff alleged that the Defendant had consciously and wilfully failed to exercise reasonable professional judgment in opening a probation file on Plaintiff in Pickens County, and wrongfully pursued a probation violation warrant against him, which resulted in his unlawful arrest and imprisonment.  Plaintiff further alleged that the Defendant made false statements in connection with the arrest and the imprisonment of Plaintiff.  As a direct consequence of Defendant's actions, Plaintiff claimed he suffered an unlawful arrest and imprisonment, resulting in a deprivation of the rights secured to him by the Fourth, Sixth, Eighth, and Fourteenth Amendments.  Plaintiff also claimed lost wages from Goldwater Concrete in the amount of $60,984.00 as well as mental anguish, loss of enjoyment of life, and undue grief, for which Plaintiff sought an undetermined amount of actual, consequential and punitive damages.  Finally, Plaintiff alleged common law negligence against Defendant.  [1]

The undersigned authorized the issuance of Special Interrogatories, which were answered on August 28, 2006.  [6]  On September 7, 2006, the court issued a Report and recommendation that the Complaint be dismissed without prejudice and without issuance and service of process with respect to the defendant Mr. Dejong, and that process should issue for service of the remaining Defendant.  [9]  On October 2, 2006, an Order was issued by the Honorable Joseph F. Anderson, Jr. which adopted the Report and Recommendation and dismissed Dejong from the case.  [12]  On October 11, 2006, the Defendant filed an answer to the Plaintiff's complaint, setting forth various affirmative defenses, including qualified immunity and sovereign immunity under the South Carolina Tort Claims Act.  [13]

On November 14, 2006, the Defendant filed a Motion for Summary Judgment along with a supporting memorandum and various exhibits.  [24-1--24-16]  On November 15, 2006, the undersigned issued an Order, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4ᵗʰ

Cir. 1975), which notified Plaintiff of the Defendant's Motion, the summary dismissal

procedure and the possible consequences if Plaintiff failed to adequately respond to the

Defendant's Motion within thirty-four (34) days.  [28]

On December 1, 2006, the Plaintiff filed a Motion to Stay or Motion for Summary

Judgment.  [30]  Thereafter, on December 12, 2006, the Plaintiff filed his Opposition to

Defendant's Motion for Summary Judgment.  [31]  As the issues have been joined, this

matter is now ripe for review by the undersigned United States Magistrate Judge.

### V.  THE STANDARD FOR DETERMINING MOTIONS FOR SUMMARY JUDGMENT

This action is before the court on cross-motions for summary judgment.  The

determination of a motion for summary judgment is governed by the holding in *Celotex*

*Corporation v. Catrett*, 477 U.S. 317, 323 (1986):

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation there can be no "genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

It is important to add that unsupported speculation by a non-moving party is

insufficient to defeat a summary judgment motion.  *Felty v. Graves-Humphreys Co.*,  818 F.

2d 1126 (4th Cir. 1987).  Similarly, genuine disputes of material facts are not demonstrated by

the bald statements of a non-moving party in affidavits or depositions.  *Stone v. University of*

*Md. Medical Sys. Corp.*,  855 F. 2d 167 (4th Cir. 1988).

In deciding whether to grant a motion for summary judgment, all justifiable

inferences must be drawn in favor of the non-moving party.  *Miltier v. Beorn*, 896 F.2d 848,

852 (4th Cir. 1990); *citing* Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  In

addition, "once a Plaintiff 'has named a witness to support [his] claim, summary judgment

should not be granted without . . . somehow showing that the named witness' possible

testimony raises no genuine issue of material fact.'" *Miltier*, 896 F.2d at 852, *quoting*

*Celotex v. Catrett*, 477 U.S. 317, 328 ( 1986) (White J., concurring).

For purposes of evaluating the appropriateness of summary judgment, this court must

construe the facts are set forth in the light most favorable to Plaintiff. *See Matsushita Elec.*

*Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("[O]n summary judgment the

inferences to be drawn from the underlying facts . . . must be viewed in the light most

favorable to the party opposing the motion.") (internal quotation marks omitted);

Fed.R.Civ.P. 56(c) (Summary judgment is proper if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is

no genuine issue as to any material fact and that the moving party is entitled to a judgment as

a matter of law.").

## VI.  ANALYSIS

### A.  Introduction

The determination by the PCR court that Plaintiff had completed his sentence as of

July 16, 2001, there was no remaining sentence for which he could have been placed on

probation, and that he had been unlawfully held in custody beginning on October 29, 2001,

permits Plaintiff to state a cause of action for damages cognizable under Section 1983. *See*

*Heck v. Humphrey*, 512 U.S. 477, 486-87, 114 S.Ct. 2364, 129 L.Ed.2d 383 (1994).

Nonetheless, for the reasons discussed below, it is recommended that the Defendant's motion

for summary judgment be granted, and the Plaintiff's motion for summary judgment be

denied.

### B.  The Plaintiff Has Failed to State a Cause of Action against the Defendant

This court finds that Plaintiff has failed to state a cause of action against the

Defendant upon which relief can be granted under 42 U.S.C. § 1983.  After reviewing the

evidence, the court concludes that the Defendant took no action in relation to the facts which

constitute the basis of Plaintiff's claim.  According to the Affidavit submitted by the

Defendant, he did not open Plaintiff's probation file, he did not issue the probation arrest warrant, and he did not serve that warrant on Plaintiff.  In fact, the Defendant had contact with Plaintiff's probation case on only two occasions.  First, in October 1998, immediately after sentencing, Defendant met Plaintiff at the jail to advise him that pursuant to the court's orders he would serve one year of probation when released from his 54 month active sentence.  Second, at the October 29, 2001, probation violation hearing before Judge Floyd, the Defendant appeared and advised the court regarding the substance of that meeting.  These events are the sum total of the actions the Defendant took in connection with Plaintiff's file.  There is no evidence that the Defendant played any role in the issuance of Plaintiff's arrest warrant on July 30, 2001.  Although the Defendant did testify at the probation violation hearing before Judge Floyd on October 29, 2001, the Defendant did so in his capacity as a probation agent, and based upon his continuing good faith, objectively reasonable interpretation of the sentencing documents issued by the court.[25]

Because the Plaintiff has failed to set forth any factual allegations that the Defendant engaged in any wrongdoing with regard to his arrest and prosecution, it is recommended that summary judgment be granted to the Defendant.

## C.  The Defendant is entitled to immunity in this action

The Defendant, as a probation agent acting in his official capacity, is also entitled to immunity from suit in this action.  Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982).  This qualified immunity is lost if an official violates a constitutional or statutory right of the plaintiff that was clearly established at the time of the alleged violation so that an objectively reasonable official in the defendant's position would have known of it.  *Id*.

In addressing qualified immunity, the United States Supreme Court has held that "a

---

[25]     *See* Sheriff Affidavit, attached as Exhibit 3 to Defendant's Memorandum, at ¶ 8.

court must first determine whether the plaintiff has alleged the deprivation of an actual
constitutional right at all and, if so, proceed to determine whether that right was clearly
established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609, 119
S.Ct. 1692, 143 L.Ed.2d 818 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676,
685 (4ᵗʰ Cir. 2000). Furthermore, the Supreme Court held that "[d]eciding the constitutional
question before addressing the qualified immunity question also promotes clarity in the legal
standards for official conduct, to the benefit of both the officers and the general public."
*Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the
inquiry ends there "because government officials cannot have known of a right that does not
exist." *Porterfield v. Lott*, 156 F.3d 563, 567 (4ᵗʰ Cir. 1998).

As mentioned above, the evidence shows that the Defendant prepared probation
documents for the Plaintiff and met with the Plaintiff on the day of his sentencing to process
Plaintiff for his pending probation. According to the Defendant, Plaintiff refused to sign the
documents, and told the Defendant he would not report upon release. The Defendant
informed the Plaintiff that if he failed to report, a warrant would be issued for his arrest.
Thereafter, the Defendant participated in Plaintiff's probation violation hearing before the
Circuit Court.[26] Under a set of similar facts, a Section 1983 action was dismissed against a
state probation officer who had prepared a probation violation report on the plaintiff in that
case after his arrest, and then testified in plaintiff's revocation hearing before the circuit
court, on the grounds that the probation officer was entitled to immunity from suit.[27] *See
Jackson v. Gable*, 2006 WL 1487047 (D.S.C. May 25, 2006), *citing Boyce v. County of
Maricopa*, 144 Fed.Appx. 653, 654 (9th Cir. Aug.15, 2005) ("The district court properly
concluded that the probation officer defendants were entitled to absolute quasi-judicial
immunity against damages claims."); *Galvin v. Garmon*, 710 F.2d 214, 215 (5ᵗʰ Cir.1983)
(state probation officers entitled to qualified immunity); *Ray v. Pickett*, 734 F.2d 370 (8ᵗʰ

---

[26]    *See* Sheriff Affidavit, attached as Exhibit 3 to Defendants' Memorandum, at ¶ 8.

[27]    In *Jackson*, Judge Floyd adopted the recommendation of Magistrate Judge Marchant.

Cir.1984) (probation officers entitled to qualified immunity for their roles in petitioning for

probation revocation); *see also Faile v. South Carolina Department of Juvenile Justice*, 350

S.C. 315, 566 S.E.2d 536, 540-541 (S.C.2002) (applying South Carolina law).  As pointed

out in *Jackson v. Gable*, "witnesses in criminal proceedings have absolute immunity in an

action for damages brought under § 1983."   *Jackson v. Gable*, 2006 WL 1487047 at \*5,

*citing Briscoe v. LaHue*, 460 U.S. 325, 327-346, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983);

*Lowman v. Town of Concord*, 1995 WL 108224 (W.D.N.Y. March 7, 1995) (collecting

cases); *Kincaid v. Eberle*, 712 F.2d 1023 (7th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct.

551, 78 L.Ed.2d 725 (1983); *Mireles v. Waco*, 502 U.S. 9, 112 S.Ct. 286, 116 L.Ed.2d 9

(1991).

 Given the analysis set forth above, it also is recommended that Plaintiff's state law

claims be dismissed.

## RECOMMENDATION

 Based on the foregoing, it is recommended that the **Defendant's Motion for**

**Summary Judgment [24] be granted,** that the **Plaintiff's Motion to Stay or Motion for**

**Summary Judgment [30] be denied,** and that this case be dismissed.

GEORGE C. KOSKO
UNITED STATES MAGISTRATE JUDGE

February 28, 2007

Charleston, South Carolina

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).

Specific written objections must be filed within ten (10) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail.  Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
P.O. Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).